[Filed April 18, 1887.]

J. C. TOLMAN ET AL., RESPONDENTS, *v.* HENRY CASEY ET AL., APPELLANTS.

APPROPRIATION OF WATER—EVIDENCE EXAMINED.—*Neil* v. *Tolman*, 12 Or. 289, involving the same questions on substantially the same evidence, approved and followed.

PRESCRIPTIVE RIGHT—MAY SUBORDINATE OTHER RIGHTS.—When the plaintiff had a prescriptive right to the use of certain quantities of water between fixed dates, upon the public lands of the United States, one who succeeds to the title of the United States takes it subject to the rights of such appropriator, and cannot complain.

POWER OF COURT UNDER FORMER DECREE.—A previous decree had determined and settled the rights of certain of the parties in the water in controversy. *Held*, that the court below had the power, and upon proper application made for that purpose, it would fully execute such decree, and if necessary, prescribe the method of measuring the water.

APPEAL from Jackson County.

*P. P. Prim*, and *S. B. Galey*, for Appellants.

*H. K. Hanna*, and *W. R. Andrews*, for Respondents.

STRAHAN, J.—The object of this suit is to enjoin the defendants from stopping, diverting, or interrupting the flow of the waters of Neil Creek, in Jackson County, Oregon, into a certain ditch owned by the plaintiffs. The court found in favor of the plaintiffs as against the defendant Henry Casey, and dismissed

the complaint as to all of the other defendants. From this decree Casey appealed, and the plaintiffs appealed from so much of the decree as dismissed their complaint against the other defendants. These appeals bring the whole case into the court for examination.

The plaintiffs allege, among other things, that in the year 1852, they and their grantors dug and constructed a ditch from what was then known as Bear Creek, now sometimes called Neil Creek, in said county, commencing at a point on said creek on or near the land now occupied by the defendant Casey, but then on government land, and from thence running in a northwesterly direction to and across the aforesaid described lands of the plaintiffs, and thereby appropriated a portion of the water of said creek. That ever since the year 1852 said ditch has been maintained continuously by plaintiffs or their grantors to conduct the water of said creek to the said lands of the plaintiffs, and the water so conducted has been, each and every year since said last-mentioned date, used by them for irrigating said lands and for watering stock, and for other domestic purposes, and that the plaintiffs are now the owners of said ditch. That from and since the year 1867 up to the decision hereinafter mentioned, plaintiffs and their grantors have appropriated and diverted the waters of said creek by means of said ditch, for the uses and purposes hereinbefore specified, as follows: From January 1st to August 15th, one hundred and sixty inches; from August 15th to September 20th, one hundred inches; and from September 20th to January 1st, sixty inches, by and under the natural flow thereof, running through a box or flume placed on a grade of three fourths of an inch to the rod. That from and after the fifteenth day of May, 1885, plaintiffs have limited the diversion and use of said water to one hundred and twenty inches, as provided by decree of this court in the two cases of *Neil* v. *Tolman.* That on or about the fifteenth day of June, 1885, the defendant Henry Casey wrongfully and maliciously, and with the intention of depriving plaintiffs of the beneficial use of said ditch, and of the water which was wont to flow therein from the natural and ordinary channel of said creek, obstructed the general flow

of the water in the channel of said creek at a point above and about twenty rods south of the head of plaintiffs' ditch, by constructing and placing a dam across said channel, whereby all of the water of said creek was diverted from its general flow to the head of said ditch, and whereby the plaintiffs ever since have been wholly deprived of the beneficial use of said ditch so owned by them as aforesaid, and the water of said creek so appropriated by these plaintiffs as aforesaid has wholly ceased to flow therein. The complaint then charges the other defendants with aiding and abetting and conspiring and confederating with the said Casey in the commission of said wrong. That the purpose and object of said defendants' confederation and conspiracy is to obtain, for their own use and enjoyment, all of the water of said creek, and deprive the plaintiffs of the use and enjoyment of the same, or any part thereof. The defendants Casey and William Taylor each filed separate answers; the defendant William Kincaid and eleven other defendants joined in their answers. Casey's answer denies the allegations of the complaint, except that it admits a prescriptive right in the plaintiffs to divert sixty inches of water and no more. The answer then claims that he is and has been for fifteen years the owner of an irrigating ditch taken out of the natural channel of Neil Creek at a point about twenty rods south from the head of the plaintiffs' ditch, and leading the water upon defendant's lands for irrigation and other domestic purposes, and that he has been diverting and using a portion of the water of said creek through said ditch ever since he dug it, in about 1870. That from the year 1867 to 1880 plaintiffs diverted sixty inches of water on a grade of three fourths of an inch to the rod from the channel of Neil Creek, at a point a few rods below H. W. Dyer's house, and about twenty rods below the head of this defendant's ditch aforesaid, and conducted said water thence west of north into and across an old channel, and into what is now called the plaintiffs' ditch, and through said ditch to the farms of the plaintiffs; that about the year 1880, plaintiffs ceased to divert water from the natural channel at said point into their ditch, and commenced to take the water out of the ditch of this defendant aforesaid, and to conduct said water

from defendant's ditch along an old channel or depression to and into the head of plaintiffs' said ditch; that the plaintiffs took the water out of this defendant's ditch in 1880, without his consent, and has ever since continued to do so wrongfully and against the wish of this defendant; and that since said date, said plaintiffs have diverted more water than they did at any time prior thereto, and that for the past three years, they have and do now divert into their said ditch and carry away from said creek nearly all the water thereof during the irrigating season, to wit, more than one hundred and sixty inches, on a grade of three fourths of an inch to the rod. That about the fifteenth day of June, 1885, this defendant turned that portion of the water which he did not need for his own use out of 'his said ditch into the natural channel of Neil Creek, and permitted it to flow down the natural channel in its customary way without obstruction, as it was his right and duty to do. That said act of turning the water out of this defendant's ditch into the natural channel as aforesaid is the same that is complained of in plaintiffs' complaint.

William Taylor's answer, among other things, sets up that he is and has been for more than twenty years a riparian owner, residing about one mile below the head of plaintiffs' ditch on said creek, and has, during every year, used the waters of said creek for domestic purposes, and for watering his stock and irrigating the crops on said land. This answer also admits that plaintiffs have a prescriptive right to sixty inches of water, to be diverted through their ditch, and alleges that they have diverted more than that amount.

Proper replies were filed to these answers. The answers of the other defendants consisted entirely of denials.

The evidence was taken in writing upon an order of reference for that purpose, and accompanies the transcript. It is therefore necessary to determine the rights of those persons as they appear by the entire record. It will be most convenient to examine: (1) The rights of plaintiffs to the water claimed by them, and their rights to the ditch as between themselves and Casey; (2) the rights of William Taylor as riparian owner; and (3) the liabil-

ity of the other defendants under the facts disclosed by the evidence.

1. It stands admitted by the pleadings that the plaintiffs have acquired a prescriptive right as against all of the defendants, to divert and appropriate to their own use sixty inches of the water of Neil Creek. The appropriation was made in 1852 by the the plaintiffs, and those under whom they claim.

In 1867 the ditch was enlarged at the lower end so as to carry the amount of water the upper end was capable of· conveying. After this change the ditch evidently carried much more of the water than it had formerly, and the plaintiffs thereafter continued in its uninterrupted use and enjoyment, with the exception of some litigation with the Neils and Wimer, in all of which the plaintiffs' claims appear, to a great extent, to have been recognized and sustained. We have again carefully re-examined the evidence adduced by all the parties, and find no cause to change or vary the conclusions reached on this subject in *Neil* v. *Tolman,* 12 Or. 289, where the same evidence was substantially before the court on the same questions, but between different parties. We therefore hold that the plaintiffs, from the first day of January to August 15th of each year, are entitled to one hundred and twenty inches of water; from the fifteenth day of August to the twentieth day of September of each year, one hundred inches; and from the twentieth day of September to the first day of January of each year, sixty inches and no more, said water running on a grade of three fourths of an inch to the rod without any additional head or pressure; said water to be taken out of Neil Creek, where the same is now taken by the plaintiffs. But the defendant Casey insists that the plaintiffs are seeking to appropriate a part of the ditch to their own use; and this depends on the question as to where Neil Creek flowed at the time the plaintiffs appropriated a portion of its waters in 1852. On this point there is much conflict in the evidence, growing principally out of the fact, as we suppose, that at that early period but little attention was paid to the vicissitudes and changes of ·such a stream. One leading fact seems to be conceded by all, and that is, the creek is subject to change its channel, which is caused by

the nature of its banks and by freshets and overflows, and in this respect it does not materially differ from most other mountain streams in this State.  After a very attentive and careful perusal of the evidence we are constrained to conclude that prior to 1862, the main channel of Neil Creek flowed through what was after that time called the west channel, a part of which the defendant Casey claims to have appropriated, and calls it his ditch.  We have no doubt that the plaintiffs' ditch was supplied with water from this channel from the time the water was first diverted; and the change which occurred in the channel about 1862 could not and did not divest the plaintiffs of any previously acquired rights.  The water which supplied their ditch flowed through this channel previous to this time, and they still had the right to supply their ditch from it.  The sudden change, which we think the evidence shows then occurred, did not deprive the plaintiffs of their right to this water and the right to have it flow into their ditch from such channel, and the defendant Casey could not, by any act of his, acquire an exclusive use to this channel, or appropriate the same to his own use, or acquire any right to exclude the water from flowing through said channel into the plaintiffs' ditch; and his claim that in excluding the water from said channel he was only performing a duty to riparian owners below cannot be sustained.

2. *Right by prescription.*  The rights of William Taylor as riparian owner, as well as the rights of all others similarly situated, depend so entirely upon the first question considered that little more need be said on this subject.  The plaintiffs' right to this water depends upon prescription, that is, upon its appropriation and use in a manner adverse to the rights of those who now object, for more than ten years.  The justice of this rule is manifest.  If one goes upon the public lands of the United States and appropriates water for a lawful purpose, and is permitted to continue in its adverse enjoyment and use for more than ten years, such appropriation ripens into a title which cannot be disturbed by one succeeding to the rights of the United States. Under the particular facts disclosed by this record, this view of the subject disposes of the claim set up by the defendant Taylor.

3. *Conspiracy.* We have searched in vain through the evidence for any satisfactory facts disclosing a confederating or any aiding or abetting of Casey, or any conspiracy on the part of the other defendants as would sustain a decree against them, or any of them. Each of them may claim some interest in this water adversely to the plaintiffs, and he may wish to see the plaintiffs' claim defeated, and even contribute money and assist in making a defense; but none of these facts, nor all together, will, under the allegations in the complaint, subject them to a suit in equity. If the plaintiffs' suit against them had been to quiet their title to the water in question, it is possible a different rule might have been applied; but here they must succeed, if at all, upon proof of the charge of conspiracy, and that fact is not established by the evidence.

*Remedies under former decree.* Upon the argument, counsel for the defendants urged that the plaintiffs were taking more water than they had a right to use as defined by the decree of this court in *Neal . Tolman, supra.* The court below has ample power to enforce that decree as well as the one we shall enter in this case, and for any violation of such decrees by any party thereto, the remedy is by an application to that court. The court has power, if necessary, to prescribe the method to be used by the plaintiffs to correctly measure the water to which they are entitled, and it is to be presumed, upon a proper application made for that purpose by any party to said suits, or either of them, the power would be exercised, if necessary, by the appointment of a receiver under section 1029 of the Civil Code.

The decrees appealed from are affirmed.