Argued and submitted March 9, on appeal and on cross-appeal, reversed and remanded with instructions June 23, Whitehill's petition for reconsideration and Horton's petition for reconsideration denied September 29, both petitions for review denied October 26, 1993 (318 Or 25)

Ray HORTON
and Madison Agency, Inc.,
an Oregon corporation,
*Appellants - Cross-Respondents,*

*v.*

Gina WHITEHILL,
*Respondent - Cross-Appellant,*

*and*

MADISON AGENCY, INC.,
an Oregon corporation,
*Defendant - Cross-Appellant.*

MADISON AGENCY, INC.,
an Oregon corporation,
*Appellant - Cross-Respondent,*

*v.*

Gina WHITEHILL,
*Respondent - Cross-Appellant.*

(9103-01735; CA A73497)

854 P2d 977

Bert E. Joachims, Portland, argued the cause and filed the briefs for appellants - cross-respondents.

W. Theodore Guthrie, Portland, argued the cause for respondent - cross-appellant Whitehill and cross-appellant

Madison Agency, Inc. With him on the brief were Peggy S. Foraker and Pfister & Tripp, P.C., Portland.

Before Warren, Presiding Judge, and Edmonds and Landau, Judges.

EDMONDS, J.

## EDMONDS, J.

Ray Horton, plaintiff, appeals and, Gina Whitehill, defendant, cross-appeals from a judgment[1] denying recovery on reciprocal claims of breach of fiduciary duty to Madison Agency, Inc., a corporation. On *de novo* review, we reverse.

Plaintiff and defendant began working together in 1987 and, in January, 1988, they incorporated as the Madison Agency, Inc. (Madison). They were the sole shareholders and directors of Madison. They were also both employees and officers of the corporation; defendant was president and plaintiff was secretary/treasurer.

In October, 1990, plaintiff informed defendant that he wanted to dissolve the corporation. By early November, he had informed her that he would not provide services to Madison after December 31, 1990. The parties began a series of offers and counter-offers regarding the sale of Madison stock or the dissolution of the corporation, none of which were acceptable to the other party. At the same time, plaintiff began working on the creation of a separate competitive business using Madison's equipment during the time that he was required to be working for Madison.[2]

On December 24, 1990, defendant left on vacation. In late December, 1990, without defendant's approval, plaintiff sent announcements concerning his new business to Madison's clients. The announcements told the clients that plaintiff was no longer associated with Madison, the location of his new office and solicited their business. On December 26, 1990, plaintiff submitted his resignation as a Madison employee and as secretary/treasurer, effective December 31,

---

[1] The judgment is captioned "final judgment order." We note, yet again, that the caption "judgment order" is a misnomer and should not be used. *Goeddertz v. Parchen*, 299 Or 277, 279 n 1, 701 P2d 781 (1985). Moreover, we express reservation concerning the caption in the judgment. This case was tried on the second amended complaint. It contained two claims, a shareholder's derivative claim, and a claim by Madison Agency, Inc. against defendant Whitehill. Defendants' counterclaim was a shareholder derivative claim against plaintiff Horton.

[2] Defendant's evidence included a directory from Madison's computer, listing plaintiff's personal files and the contents of several of those files. Those files related to plaintiff's new business. The directory also included the date the files were last updated, several of which had November 1990 dates. Moreover, there was evidence that plaintiff began purchasing equipment for his business while still a Madison employee.

to Madison's corporate counsel.[3] He then issued paychecks and bonus checks to himself and defendant, again without her consent. Finally, he changed the message on Madison's answering machine to indicate where he was now doing business individually.

Defendant returned from her vacation on January 6, 1991, to discover that plaintiff had resigned and had begun competing with Madison and soliciting Madison's clients. She determined that she could not obtain a replacement for plaintiff and could not effectively compete with him for Madison's clients. As a result, she terminated Madison's business activity.[4] She collected more than $8,000 in accounts receivable and sold the majority of Madison's office equipment. Then, after paying Madison's currently owed bills, she paid her personal attorney fees of $2,750, paid herself $5,532 as salary for January, 1991, and 3 months severance pay, and paid state and federal income tax on the 1991 income paid to her. That left $80 in cash and approximately $8,000 in uncollected receivables belonging to Madison.[5] At no time did defendant consult with plaintiff or obtain his consent to the sale of assets or payment of salary to her. She then resigned as an employee, officer and director of Madison, retaining only her shareholder interest. Since that time, plaintiff has acted as "bookkeeper" for the corporation, collecting some of the remaining accounts receivable and paying the remaining obligations of the corporation.

Following trial, the court made special findings of fact that, although both parties had breached their fiduciary duty to the corporation, neither had acted in "bad faith." Therefore, it denied recovery to all parties. The parties filed objections to the court's findings of fact and conclusions of law, which were deemed denied. ORCP 62. On appeal, both parties assign error to particular findings and conclusions of law made by the court. In substance, each party asserts that

[3] Plaintiff did not relinquish his shares or resign as a director of Madison. Moreover, Madison's counsel sent plaintiff's resignation to defendant's attorney, who told plaintiff not to disperse any Madison funds to himself.

[4] Defendant consulted with her personal attorney but at no time consulted Madison's corporate counsel regarding the situation.

[5] The amounts paid for state and federal income tax have since been returned to Madison.

the court erred in finding that each breached the fiduciary duty to Madison.

Plaintiff argues that he spent limited time on his new business while working for Madison, that some of the time spent was between December 23 and December 31 when Madison was closed for the holiday and that, in any event, there is no evidence that such a breach caused Madison to suffer damage. We hold that he, as a director and full-time employee of Madison, had a duty not to usurp Madison's business or "corporate opportunities." In the case of a director who is a full-time employee of the corporation, a "corporate opportunity" includes any opportunity to engage in a business activity that the director knows or reasonably should know is closely related to the business in which the corporation is engaged or may reasonably be expected to engage. *Klinicki v. Lundgren*, 298 Or 662, 678, 695 P2d 906 (1985). Plaintiff, while a director and an employee, successfully solicited business away from Madison to his competing business. That conduct constitutes a breach of his duty to Madison.

We turn to the issue of damage to Madison resulting from plaintiff's breach. We agree with the trial court that defendant has not sustained her burden of proving any monetary loss to Madison as the result of plaintiff's diversion of business opportunities. After leaving Madison, plaintiff performed work for non-Madison clients as well as for former Madison clients. Because defendant's evidence fails to separate the amount of plaintiff's profit that is attributable to the work done for former Madison clients from that done for the non-Madison clients, that element of the damage is not established by the evidence.

However, a court sitting in equity has the power to fashion the remedy that it deems necessary and appropriate under the circumstances. *State ex rel Washington Co. v. Betschart*, 72 Or App 692, 700, 697 P2d 206 (1985). The evidence establishes that plaintiff breached his duty to Madison when he began working on his competing business in November, 1990. "A corporate officer who engages in activities which constitute a breach of his duty of loyalty * * * is not entitled to any compensation for services during that period of time even though part of those services may have

been properly performed." *American Timber v. Niedermeyer*, 276 Or 1135, 1155, 558 P2d 1211 (1976). We hold that the appropriate equitable remedy is to require plaintiff to return to the corporation all salary and bonuses paid to him during the months of November and December, 1990, which we calculate to be $5,205.11.

■■ Defendant also assigns error to the court's finding that she breached her fiduciary duty to Madison. She argues that she was acting on the advice of her attorney and, therefore, she cannot be held liable. ORS 60.357(2)(b); ORS 60.377(2)(b).[6] On this record, we hold that defendant cannot escape liability to Madison by relying on her attorney's advice. ORS 60.357(3) provides:

> "A director is not acting in good faith if the director has knowledge concerning the matter in question that makes reliance otherwise permitted by subsection (2) of this section unwarranted."

ORS 60.377(3) provides:

> "An officer is not acting in good faith if the officer has knowledge concerning the matter in question that makes reliance otherwise permitted by subsection (2) of this section unwarranted."

---

[6] ORS 60.357(2) provides, in part:

"In discharging the duties of a director, a director is entitled to rely on information, opinions, reports or statements including financial statements and other financial data, if prepared or presented by:

"* * * * *

"(b) Legal counsel, public accountants or other persons as to matters the director reasonably believes are within the person's professional or expert competence[.]"

ORS 60.377(2) provides, in part:

"In discharging the duties of an officer, an officer is entitled to rely on information, opinions, reports or statements, including financial statements and other financial data, if prepared or presented by:

"* * * * *

"(b) Legal counsel, public accountants or other persons as to matters the officer reasonably believes are within the person's professional or expert competence."

Defendant argues that the director or officer is entitled to rely on the opinions of the director or officer's personal attorney as well as those of corporate counsel. We do not read these statutes to entitle a corporate director or officer to use the advice of counsel as a cloak of immunity. Each case must turn on its own facts.

Defendant had knowledge concerning the payment of salaries to the parties and the sale of assets that made her reliance on her attorney unwarranted. She knew that the parties' agreement was that their salaries would be equal after the existing obligations were paid and that, after considering future obligations and, upon agreement of the parties, what remained in the corporate account could be used for their salaries. Moreover, defendant was advised by the attorney who handled the incorporation that the shareholders control the sale of all corporate assets. *See* ORS 60.534. Defendant never obtained plaintiff's consent to the distribution of salary to her or to the sale of Madison's assets. In the light of those facts, we hold that she breached her fiduciary duty to Madison.[7] We hold that the appropriate remedy for defendant's breach of her fiduciary duty is to return to Madison the $2,750 paid for her personal attorney fees and the $5,532 paid to her as January salary and severance pay.

■ As to the monies paid to defendant as reimbursement of expenses, she testified that she completed the necessary corporate form to receive reimbursement. Apparently that form was lost during the closing of Madison's business operation. Defendant testified that she expended considerable time in collecting the $8,000 in accounts receivable for Madison. We hold that defendant was entitled to the reimbursement of those expenses.

On appeal and on cross-appeal, reversed and remanded for entry of amended judgment not inconsistent with this opinion.

---

[7] Defendant says that, because plaintiff is "the very individual who had placed the corporation in a position which required closing down the business," she should not be required to consult with him before disposing of corporate assets or paying her salary. She is wrong. She could have sought to remove plaintiff as a director, ORS 60.327, or could have sought to dissolve the corporation. ORS 60.661 *et seq.* She is not permitted, however, to take unilateral action to the detriment of the corporation to which she owes a fiduciary duty.